Frank D. McALLISTER & wife, Cary Lynn McAllister, Appellants,

v.

Barry I. SAMUELS & wife, Carole Samuels, Appellees.

No. C14–92–01155–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 24, 1993.

Bert T. McDaniel, Houston, for appellants.

Michael C. Boltz, Charles J. Jacobus, James F. Tyson, Houston, for appellees.

Before ROBERTSON and CANNON, JJ., and MORSE, J., Sitting by Designation.

## OPINION

CANNON, Justice.

This is a boundary dispute. The McAllisters sued the Samuels claiming ownership of a strip of land by adverse possession or acquiescence. The trial court granted the Samuels' motion for summary judgment. The McAllisters appeal. We affirm.

In 1987, the McAllisters bought Lot 13 of a platted subdivision tract; in 1988, the Samuels bought Lot 14. Since the 1940's or 50's, a fence divided the two lots. The Samuels desired to replace the fence, but a dispute arose over where the new fence should be located. The Samuels commissioned a survey showing that the old fence was located on their Lot 14 some nine inches inside the boundary line separating Lots 13 and 14. The Samuels removed the old fence and constructed a new fence along the surveyed boundary line. The McAllisters saw this as an appropriation of a nine-inch strip of their property.

The McAllisters commissioned their own survey, which agreed with the Samuels' survey. Nevertheless, the McAllisters sued the Samuels claiming (1) that the McAllisters had acquired title to the strip of land by adverse possession, (2) alternatively, that they owned the property by acquiescence, (3) that they were owed $200 per month rent on the strip of land from the time that the new fence was built, (4) that they were entitled to a $2,000 reimbursement for the old fence, which they claimed to own, and (5) that they were entitled to attorneys' fees and costs.

The Samuels counterclaimed under the declaratory judgment act to clear title to the nine-inch strip and to seek attorneys' fees. They supplemented their counterclaim to assert additional, independent grounds for attorneys' fees based on the McAllisters' allegedly frivolous pleadings. The trial court granted the Samuels' motion for summary judgment and severed out their claims for attorneys' fees. The McAllisters appeal.

In point of error one, the McAllisters complain that the trial court erred in granting the Samuels' motion for summary judgment and entering final judgment without ruling on, or even considering, their request for additional time to prepare a response.

On January 24, 1992, the Samuels filed their motion for summary judgment and set submission for February 24, 1992. On January 31, 1992, the Samuels filed an amended motion for summary judgment, the submission date remaining unchanged. On February 17, 1992, the McAllisters filed their timely response to the motion for summary judgment. However, they requested more time to conduct further discovery and obtain signatures on specifically identified affidavits. *See* TEX.R.CIV.P. 166a(g). The McAllisters complain that the trial court abused its discretion by completely ignoring their request for continuance.

The record does not affirmatively reflect that the trial court did not consider the McAllisters' request for continuance. The McAllisters carry the burden to see that a sufficient record is presented to show error requiring reversal. TEX. R.APP.P. 50(d). Furthermore, the record does not show that the trial court ever ruled on the McAllisters' request for more time. To preserve error, an appellant must get a ruling from the trial court. TEX. R.APP.P. 52(a). We find that the McAllisters have not preserved error.

Even if error was preserved, we find that the court would not have abused its discretion in denying the continuance. Whether to grant the McAllisters' request for a continuance was within the trial court's sound discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). On appeal, we will not disturb the trial court's decision absent an abuse of that discretion. *Id.*

The McAllisters filed suit on July 9, 1990. After the filing of the suit, another eighteen months was available for investigation and discovery before the Samuels filed their motion for summary judgment. The McAllisters received at least twenty-one days notice of the summary judgment hearing. TEX.R.CIV.P. 166a(c).

■ Generally, it is not an abuse of discretion to deny a motion for continuance if the party has received the twenty-one days notice required by Rule 166a(c). *Verkin v. Southwest Ctr. One, Ltd.*, 784 S.W.2d 92, 95 (Tex.App.—Houston [1st Dist.] 1989, writ denied). In considering continuation requests, a trial court can presume that a plaintiff has investigated his own case prior to filing. *Compare Cronen v. Nix*, 611 S.W.2d 651, 653 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 112 (1981) (no abuse of discretion to deny *plaintiff's* continuance) with *Verkin, supra* (abuse of discretion to deny *defendant's* continuance when motion for summary judgment filed only fifty days after suit filed).

The trial court could have found that there was sufficient time before and after filing suit, and after notice of the summary judgment hearing, for the McAllisters to prepare their case and response. We overrule point one.

In point two, the McAllisters contend that the trial court erred in granting the Samuels' motion for summary judgment and entering final judgment without ruling on, or even considering, the McAllisters' special exceptions to the Samuels' counterclaim pleadings.

The McAllisters filed their special exceptions on February 17, 1992, the same day they filed their response to the Samuels' motion for summary judgment. The McAllisters complained that the Samuels' declaratory judgment counterclaim did not state a cause of action, did not specify the damages sought, and was merely an attempt to justify a claim for attorneys' fees.

■ The McAllisters did not obtain a ruling on their special exceptions prior to the February 24 summary judgment hearing or before the May 27 signing of the summary judgment. The McAllisters did request a hearing on their special exceptions on March 24, 1992, but the record does not reflect that a hearing was ever held or a ruling obtained. The McAllisters had the burden to obtain a timely hearing to present its special exceptions to the trial court

and obtain a ruling. Their failure to do so waived error. *R.I.O. Sys., Inc. v. Union Carbide Corp.*, 780 S.W.2d 489, 491 (Tex. App.—Corpus Christi 1989, writ denied); RULE 52(a).

■ Even if error was preserved, we would not hold that the trial court abused its discretion in denying McAllisters' special exceptions. First, a declaratory judgment pleading need not set out a cause of action *per se*. It is only necessary to identify a justiciable controversy within the court's jurisdiction. *See Texstar North America, Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672, 679 (Tex.App.—Corpus Christi 1991, writ denied) and *Transportation Ins. Co. v. Franco*, 821 S.W.2d 751, 754 (Tex.App.—Amarillo 1992, writ denied). Second, the Samuels' counterclaim sought the affirmative relief of a declaration of the exact boundary between the two lots and the ownership of the old and new fences. Third, the Samuels' monetary damages related to their attorneys' fees. That issue was not included in the summary judgment but was reserved for trial. We overrule point two.

In point three, the McAllisters complain that the trial court erred in granting summary judgment and final judgment without a ruling on, or even considering, the "mandatory" obligation to stay proceedings specified in the Soldiers' and Sailors' Civil Relief Act (the "Relief Act"). *See* 50 U.S.C. app. § 501 *et seq.* (1988).

■ The McAllisters stated in their response to the Samuels' motion for summary judgment, "Mr. Frank McAllister is on temporary assignment with the U.S. Army Reserve and is not available to pursue the obtaining of the affidavits of Donovan or Morris." We find that this statement was insufficient to inform the trial court that the McAllisters were invoking the protections of the Relief Act. To preserve a complaint for appellate review, a party must have stated to the trial court the specific grounds for the ruling he desired the court to make. RULE 52(a). This was not done, and we find that the McAllisters did not preserve error.

■ Even if error was preserved, we find that the trial court would not have abused its discretion in refusing to stay the proceedings. The Relief Act reads in pertinent part:

> At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, *in the discretion of the court* in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act ... unless, *in the opinion of the court*, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.

50 U.S.C. app. § 521 (1988) (emphasis added).

"Judicial discretion [is] conferred on the trial court instead of rigid and undiscriminating suspension of civil proceedings...." *Boone v. Lightner*, 319 U.S. 561, 565, 63 S.Ct. 1223, 1226, 87 L.Ed. 1587 (1943). For the trial court to deem the Relief Act inapplicable, "[t]he [Relief] Act does not expressly require findings.... [I]t requires only that the court be of opinion that ability to defend [or assert claims] is not materially affected by military service." *Id.* at 571, 63 S.Ct. at 1229. On review, the standard is abuse of discretion. *Id.* at 572, 63 S.Ct. at 1230.

The Samuels filed their original motion for summary judgment on January 24, 1992, and set submission for February 24, 1992. Frank McAllister, a Army reservist, was on active duty on February 14–16 (three days). The McAllisters asserted that Frank McAllister was needed to pursue the obtaining of affidavits. But the McAllisters were represented by counsel, and securing affidavits is a traditional function of counsel. We find that the trial court would not have abused its discretion by denying the McAllisters a stay. *See Rosenthal v. Smith*, 35 Ohio Law Abs. 629, 42 N.E.2d 464 (1942) (Relief Act not applicable to a person in military service who is represented by counsel and where the work incident to the litigation did not require his presence or assistance). We overrule point three.

In point four, the McAllisters argue that the trial court erred in granting summary judgment and final judgment on the pleadings in the absence of any special exceptions directed by the Samuels to such pleadings.

The McAllisters characterize the Samuels' summary judgment as being based on insufficiency of the McAllisters' pleadings. We disagree. The Samuels' first motion for summary judgment was not an attack on the sufficiency of the Samuels' pleadings. Rather, the motion set out argument and proof to disprove at least one element of each of the McAllisters' claims. The Samuels' second motion for summary judgment sought affirmative relief on their counterclaim for attorneys' fees based on the McAllisters' allegedly frivolous pleadings. This latter claim was not an attack on the *sufficiency* of the pleadings, but rather, involved allegations of bad faith in their preparation. We overrule point four.

In point five, the McAllisters contend that the trial court erred in granting the Samuels' motion for summary judgment because summary judgment was not proper on a damages issue still in dispute.

■ The McAllisters rely on TEX. R.CIV.P. 166a(a): "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages." They argue that questions of fact remain as to their damages and that Rule 166a(a) somehow prevents the trial court from rendering summary judgment on liability and damages.

Rule 166a(a) permits trial courts to adjudge liability by partial summary judgment and then try damages issues on their merits. *See, e.g., Hanover Fire Ins. Co. v. Bock Jewelry Co.*, 435 S.W.2d 909, 919 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). But the trial court dismissed all of the McAllisters' causes of action against the Samuels. It is self-evident that there are no damages issues to try when the

defendant is found not liable. We overrule point five.

In point six, the McAllisters complain that the trial court erred in granting summary judgment because the Samuels' own summary judgment proof established the existence of many fact questions.

In our review of a summary judgment, we apply the following criteria: (1) The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law, (2) In deciding if there are unresolved issues of material fact that preclude summary judgment, evidence favorable to the non-movant is taken as true, and (3) Every reasonable factual inference favorable to the non-movant is accepted and any doubts resolved in the non-movant's favor. *Nixon v. Mr. Property Management, Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The Samuels' burden as defendant seeking summary judgment was to disprove, as a matter of law, at least one essential element of each of the McAllisters' causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991).

The Samuels' summary judgment proof consisted of the live pleadings and relevant deeds, surveys, deposition excerpts, photographs, and responses to interrogatories. The McAllisters' timely-filed response included only the McAllisters' own affidavit as summary judgment proof. The McAllisters attempted to supplement their response on February 24, 1992, the day of the summary judgment hearing, and on March 17, 1992. But these supplements were untimely, and the McAllisters never obtained a ruling on their request for continuance or requests for permission for the late filings. Therefore, we will only consider the record and summary judgment proof available to the trial court on the date of submission. *Marek v. Tomoco Equip. Co.*, 738 S.W.2d 710, 712 (Tex.App.—Houston [14th Dist.] 1987, no writ).

We also note, as a preliminary matter, that the deposition of Frank McAllister was not on file with the trial court and is not included in the appellate record. Therefore, we will consider only those portions filed along with the Samuels' motion for summary judgment. *See Deerfield Land Joint Venture v. Southern Union Realty Co.*, 758 S.W.2d 608, 610 (Tex. App.—Dallas 1988, writ denied). Furthermore, we will only consider those issues of facts and law raised by the parties by submission day. *El Paso Assocs., Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 19 (Tex.App.—El Paso 1990, no writ).

The McAllisters pled ownership of the nine-inch strip of land by adverse possession, or in the alternative, under a boundary-by-acquiescence theory. We now review the summary judgment proof to determine if the Samuels were able to negate at least one element of these causes of action.

### Adverse Possession

§ 16.021. Definitions

In this subchapter:

(1) "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

(2) "Color of title" means a consecutive chain of transfers to the person in possession that:

(A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

(B) is based on a certificate of headright, land warrant, or land scrip.

(3) "Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

(4) "Title" means a regular chain of transfers of real property from or under the sovereignty of the soil.

Tex.Civ.Prac. & Rem.Code Ann. § 16.021 (Vernon 1986).

### Three–Year Statute

The three-year statute requires that a claimant have "peaceable and adverse possession *under title or color of title.*" *Id.* § 16.024 (emphasis added). The Samuels offered the McAllister deed as summary judgment proof as an exhibit to the McAllister deposition excerpts. The deed described the McAllister property as: "Lot 13 in Block 7 of BELLE COURT, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 452, Page 498, of the Deed Records of Harris County, Texas." Also exhibits to the deposition excerpts were copies of surveys indicating conformity of the Lot 13 property lines to the recorded plat.

The McAllisters' deed did not purport to show their ownership of any portion of Lot 14. Therefore, the McAllisters could not have had possession of the nine-inch strip of land *under title or color of title.* There was no summary judgment proof to raise any fact issue regarding documented title. Therefore, we find that the Samuels have disproved as a matter of law an essential element of the McAllisters' adverse possession claim under the three-year statute of limitations.

### Five–Year Statute

The five-year statute requires that a claimant hold property in peaceable and adverse possession and (1) cultivates, uses, or enjoys the property, (2) pays applicable taxes on the property, and (3) claims the property *under a duly registered deed.* *Id.* § 16.025 (emphasis added).

As discussed above, the McAllisters cannot claim the property under a duly registered deed. Moreover, the Samuels offered as summary judgment proof copies of property tax receipts, which showed that the McAllisters had never paid taxes on any portion of Lot 14. Frank McAllister admitted in his deposition that the tax receipts did not show that he had ever paid taxes on any portion of Lot 14. We find that the Samuels have disproved as a matter of law an essential element of the McAllisters'

adverse possession claim under the five-year statute.

### Ten–Year Statute

The ten-year statute requires a claimant to hold property in peaceable and adverse possession and to cultivate, use, or enjoy the property. *Id.* § 16.026.

"Adverse possession" requires an actual and *visible appropriation* of real property that is *hostile* to the claim of another person. *Id.* § 16.021(1) (emphasis added). The doctrine of encroachments protects an owner of land where he cannot reasonably know from the trespasser's possession that it is hostile. *Grogan Mfg. Co. v. Lane,* 173 S.W.2d 655, 657 (Tex.Civ. App.—Galveston 1943, writ ref'd w.o.m.). The doctrine is typically invoked as a defense to adverse possession where the claimant asserts ownership of a large tract by virtue of a slight encroachment onto the tract.

> [W]here the possession [by an intruder] is [not] so notorious, visible and distinct that the reasonably diligent owner would refer such possession to the intention to appropriate his land, and would ... reasonably impute such possession to a mistaken belief on the part of the intruder that he is occupying his, the intruder's, own land, the doctrine of encroachments ... excuse[s] the owner from taking notice of the hostile possession.

*Id.*

There was summary judgment proof of two surveys conducted in 1990—one commissioned by the McAllisters and one by the Samuels. Both surveys agreed with respect to the location of the common boundary line between Lot 13 and Lot 14. Both surveys indicated a maximum encroachment of nine-inches of the old fence line into Lot 14, the Samuels' lot.

The doctrine of encroachment is not directly applicable here, since the McAllisters are not claiming ownership of any property other than the nine-inch strip on their side of the original fence. Nevertheless, we are guided by the principle of fair notice underlying the doctrine:

[I]t is not unlikely that the owner ... though reasonably familiar with his [boundary] lines, would have failed to note the encroachment upon his land upon actually seeing the fence. We recognize the rule that the owner must be held to know his own boundaries, but such slight encroachments as may readily occur through mistake ... we do not think should be held such actual, visible appropriation as is required to support limitations.

*McAdams v. Moody*, 50 S.W. 628, 629 (Tex. Civ.App.—Dallas 1899, no writ).

The McAllisters' reliance on *Fish v. Bannister*, 759 S.W.2d 714 (Tex.App.—San Antonio 1988, no writ), is misplaced. The *Fish* court affirmed a finding of adverse possession. But *Fish* involved an 800–foot strip of grazing land extending over a two-mile run. *Id.* at 716. The adverse claimants' livestock were continually present and visible, and the claimants made active and total use of the strip's grazing capacity. *Id.* at 720. The claimants also harvested cedar, sold pipeline easements, and leased the pastures (including the disputed strip) to hunters. *Id.*

 We find as a matter of law that the nine-inch encroachment onto Lot 14 was so slight as to be insufficient to put the Samuels on notice of actual, visible appropriation of their land.

The McAllisters claim in their affidavit to have maintained the original fence and picked up trash and leaves from the nine-inch strip of land. They argue that such activity raises a fact issue regarding notice to the Samuels of their hostile possession of the strip. We disagree.

 For our purposes, there are two kinds of fences: "casual fences" and fences that "designedly enclose" an area. If, as here, the fence existed before the claimant took possession of the land, and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a "casual fence." *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex.1990). "Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed

area, generally does not change a casual fence into a designed enclosure." *Id.* A claimant may substantially modify a casual fence and so change its character that the fenced-in area becomes a designed enclosure. *Id.*

The Samuels' summary judgment proof established that the encroaching fence had been sited and constructed by neighbors by mutual agreement well before the McAllisters acquired Lot 13. There was evidence that the fence was constructed for the purpose of restraining the wanderings of the neighbors' children and pets. We find that the Samuels' summary judgment proof establishes that the fence began as a "casual fence." We further find that the McAllisters did not counter with summary judgment proof to raise a fact issue whether the "casual fence" was transformed by substantial activity into a "designedly enclosing" fence. It is the later type of fence that would have constituted notice to the Samuels of McAllisters' hostile possession of the nine-inch strip.

We find that the McAllisters' possession of the nine-inch strip was not the visible, hostile appropriation contemplated by the adverse possession statutes. The Samuels have disproved as a matter of law an essential element of the McAllisters' adverse possession claim under the ten-year statute.

### Twenty–Five Year Statute

 A person, regardless of whether the person is or has been under a legal disability, may not maintain an action for the recovery of real property held for 25 years before the commencement of the action in peaceable and adverse possession by another who holds the property in good faith and *under a deed or other instrument* purporting to convey the property that is recorded in the deed records of the county where any part of the real property is located.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.028 (Vernon 1986) (emphasis added).

As discussed above, the McAllister deed does not purport to convey any portion of

Lot 14. There was no summary judgment evidence of any other written instrument under which the McAllisters claim the nine-inch strip of Lot 14. We find that the Samuels have disproved as a matter of law an essential element of the McAllisters' adverse possession claim under the twenty-five year statute.

### Boundary-by-Acquiescence

In addition to and distinct from their claim of adverse possession, the McAllisters argue that the old fence line was established as the boundary between Lots 13 and 14 by acquiescence. They point to Samuels' own summary judgment proof, which attests that the original fence was sited and constructed by mutual agreement between the then owners of Lot 13 and 14 sometime in the 1940's or early 1950's. The McAllisters argue, in effect, that the Samuels and their predecessors in interest acquiesced in the fence-line boundary and thereby ratified the boundary agreement.

However, the McAllisters recognized in their brief that, in order to establish a boundary-by-acquiescence, the agreement must stem from some initial uncertainty or dispute over the true boundary line. "The existence of uncertainty, doubt or dispute is essential to the validity of such [an] agreement." *Gulf Oil Corp. v. Marathon Oil Co.*, 137 Tex. 59, 152 S.W.2d 711, 714 (1941). The Samuels' summary judgment proof showed that the purpose of the original agreement was to restrict the movement of children and pets. The proof showed that the fence was placed along what was thought to be the true property line. Therefore, according to the Samuels' proof, the agreed boundary was not meant to establish some new boundary different from the original platted lot boundary.

The McAllisters interpret the Samuels' proof differently and argue that the proof raises a fact issue. They contend that if fence was constructed on a line by mutual agreement, then there must have been some doubt or uncertainty as to the true boundary line. But uncertainty as to the location of the boundary line is a "predicate or basis for an enforceable boundary agree-ment." *Id.* 152 S.W.2d at 715. To accept the McAllisters' reasoning would be to accept the existence of the agreement as its own predicate to enforceability. This we decline to do. We find that there was no fact issue regarding the existence of the necessary "uncertainty" predicate to the boundary-by-acquiescence theory of recovery. The Samuels have disproved as a matter of law an essential element of the McAllisters' boundary-by-acquiescence claim.

We note that, in their brief, the McAllisters quote from to *Yates v. Hogstrom*, 444 S.W.2d 851 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ): "[A] line may be established as a true boundary line of a tract of land by recognition and acquiescence of the line as the true line by all interested parties for ... a period beyond that required by the statute of limitations for the acquisition of land by adverse possession." *Id.* at 853. The McAllisters have never advanced this theory of recovery to the trial court separate and apart from their agreed-boundary argument discussed above. The non-movant must expressly present to the trial court any reasons for avoiding the movant's right to summary judgment. These matters may not be raised for the first time on appeal. *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986).

We find that the Samuels have established their right to summary judgment as a matter of law. We overrule point six.

In point seven, the McAllisters maintain that the trial court erred in granting the Samuels' motion for severance of the Samuels' attorneys' fees claims.

A claim is properly severable if "the controversy involves more than one cause of action, the severed claim is one that would be the proper subject to a lawsuit if independently asserted, and the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.... The controlling reasons for a severance are to do justice, avoid prejudice and further convenience." *Guaranty Fed. Sav. Bank v. Horseshoe*

*Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (citations omitted). The trial court has broad discretion in the matter of severance, and the trial court's decision to grant a severance will not be reversed absent an abuse of discretion. *Id.*

With the granting of the Samuels' summary judgment, the only matters pending before the court were the Samuels' attorneys' fees claims. The Samuels claimed these fees under their declaratory judgment counterclaim. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.034 & 37.009 (Vernon 1986). The Samuels also claimed the fees under a counterclaim for Rule 13 sanctions. *See id.* § 9.001 *et seq.* (Vernon Supp.1993); TEX.R.CIV.P. 13.

 A claim for frivolous lawsuit damages is a claim for affirmative relief. *Page v. Page*, 780 S.W.2d 1, 2 (Tex.App.—Fort Worth 1989, no writ). A request for relief under Rule 13 requires the trial court to make findings wholly distinct from the underlying merits of the case and may involve the introduction of evidence on different facts and issues. We find that the trial court did not abuse its discretion in severing the Samuels' attorneys' fees claims at least to the extent of the Rule 13/Chapter 9 counterclaim for sanctions. Nor do we find it unreasonable for the trial court to have desired to deal with all attorneys' fees issues together.

 The McAllisters argue that the trial court should not have granted severance without considering their motion for reconsideration of the summary judgment. But the record does not contain a ruling on that motion. Any error is waived. RULES 50(d) & 52(a). We overrule point seven.

 In point eight, the McAllisters complain that the trial court erred in refusing to consider their response to the Samuels' motion for severance and motion for reconsideration of the summary judgment.

The record does not affirmatively reflect that the trial court did not consider the McAllisters' response or motion for reconsideration. The McAllisters failed to obtain a ruling on these pleadings. Any error is waived. *Id.* We overrule point eight.

Finding no reversible error, we affirm the judgment below.