# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00724-CV

**NJ Williams Family Partnership, Ltd., Appellant**

**v.**

**James Buchanan Winn, III, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
### NO. 2001-0116, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

NJ Williams Family Partnership, Ltd. (the "Partnership") appeals a judgment rendered against it in favor of James Buchanan Winn, III ("Winn") in its suit to quiet title to 1.8 acres of land in Hays County, Texas. The Partnership contended that it had record title to the property and sought to remove a cloud on its title created by Winn's filing a deed that purported to convey the 1.8-acre tract to Winn. Winn filed an answer denying that the Partnership had record title to the property and, in the alternative, filed a counterclaim asserting title to the property by adverse possession. After a bench trial, the district court rendered judgment in favor of Winn. The Partnership appeals, contending that it conclusively established that the Partnership has record title to the property and that Winn failed to prove he acquired title to the property by adverse possession. We reverse the judgment of the district court and render judgment in favor of the Partnership.

***Factual and Procedural Background***

This dispute involves ownership of 1.8 acres of land (the "Disputed Property") located on the boundary between ranches owned by the Partnership and Winn in Hays County, Texas. The Winn ranch lies directly north of the Disputed Property, and the Partnership ranch lies to the southeast.



The Disputed Property is roughly triangular in shape and is bounded on the north and west sides by what the Partnership claims to be the record boundary lines of the Partnership ranch. The third side of the triangle is a fence that begins at a point along the north boundary of the Partnership ranch and meanders southwest until it reaches the west boundary of the Partnership ranch. Winn claims that the meandering fence is part of the southern boundary of the Winn ranch.

The Partnership's predecessors in interest, Lee and Nelda Williams, acquired their property in 1958. The conveyance to Lee and Nelda Williams (the "1958 Deed") describes the northern boundary of the Partnership ranch as a line traveling east/west "following approximate a fence line West 3344 feet to a cedar tree about 10 inches in dia. Marked x on the North side."

In 1996, Nelda Williams conveyed the entire ranch, with the exception of an acre she retained as her residence, to the NJ Williams Family Partnership.

Winn's predecessor in interest, his father James B. Winn, Jr., acquired the Winn ranch in 1937. His conveyance (the "1937 Deed") describes the southern boundary of the Winn ranch as beginning at a cedar tree 12 inches in diameter, marked with an "X" on its northwest side, located in the northwest corner of "Gary's pasture fence." From that point, the boundary goes east along "Gary's pasture fence" 2,508 feet. Neither the 1958 Deed nor the 1937 Deed mentions the meandering fence.

The Disputed Property is essentially a hill country bluff. The terrain is rocky and hilly with dense cedar trees and brush. The meandering fence leaves the north boundary of the Partnership ranch at a "water gap"—a portion of the fence that crosses a creek and hangs from a cable secured to trees on either side of the creek. After crossing the creek, the fence skirts the south side of the bluff until it rejoins the west boundary of the Partnership ranch. Mike Williams, a member of the NJ Williams Family Partnership, testified that the meandering fence does not follow the true boundary line between the Partnership ranch and the Winn ranch. Although neither Winn nor Williams knew who built the meandering fence, Williams opined that the fence was placed in a location where it could be easily maintained as opposed to continuing along the true property line up the rocky bluff through a ravine and dense brush. Williams also stated that the placement of the water gap was determined by the presence of trees large enough to support the hanging fence, and that in 1998 he had to move the water gap portion of the fence even further into the Partnership ranch property in order to find a suitable anchoring tree.

3

Winn had his ranch surveyed in 1984. The 1984 survey's description of the southern boundary of the ranch differs from the description in the 1937 Deed. According to the 1984 survey, the boundary does not continue west to the cedar tree referred to in the 1937 Deed. Rather, the 1984 survey field notes indicate that the surveyors set an iron pin at the point where the meandering fence leaves the property line, and they set additional iron pins at various points along the meandering fence to the point where it rejoined the west boundary of the Partnership ranch.[1] The 1984 survey identified the meandering fence as part of the southern boundary of the Winn ranch and, thus, included the Disputed Property as part of the Winn ranch.

In 1987, Winn and his sister decided to partition the Winn ranch between them, and Winn had another survey done. The description of the southern boundary in the 1987 survey follows the iron pins set along the meandering fence by the 1984 survey crew. Consequently, the 1987 survey also includes the Disputed Property as part of the Winn ranch. Winn filed a Partition Deed in the Hays County deed records. The Partition Deed conveys the west part of the Winn ranch to Winn and the east part of the Winn ranch to Winn's sister. Attached to the Partition Deed is the 1987 survey describing the southern boundary of the Winn ranch as following the meandering fence. As a consequence, the Partition Deed includes the Disputed Property in the description of property conveyed to Winn.

---

[1] Clarence Littlefield, the owner of the company that performed the 1984 survey, testified that when locating property lines, a surveyor should first attempt to find any "monuments" identified in the deed instrument. In most cases, the "monument" is a large tree with a mark on it such as the cedar tree referred to in the 1958 Deed and the 1937 Deed. The field notes indicated that, in 1984, no fence line continued up the bluff to the cedar tree. Littlefield testified that the 1984 surveyors apparently did not attempt to locate the cedar tree "monument," and instead set new survey pins along the meandering fence.

The Partnership became aware of the Partition Deed and the 1987 survey in September 2000 when Mike Williams saw a sales brochure for a portion of the ranch owned by Winn's sister. The brochure included a survey plat that noted "1.8 acres in conflict." Mike Williams then investigated the deed records and discovered the discrepancy between the boundary descriptions in the 1958 Deed and the Partition Deed.

In October 2000, the Partnership's attorney sent Winn a letter asking Winn to explain the basis for his claim to the Disputed Property. Winn responded that he did not "have a clue as to what you are talking about—the fence hasn't changed in 63 years or longer" and indicated that he would not retreat from his claim of ownership of the Disputed Property. In January 2001, the Partnership filed a suit to quiet title to the Disputed Property. Winn denied that the Partnership had record title to the Disputed Property and, in the alternative, filed a counterclaim asserting title to the Disputed Property by adverse possession under the 5-, 10-, and 25-year adverse possession statutes. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025-.028 (West 2002).

After a bench trial, the district court rendered judgment that Winn had title to and possession of the Disputed Property. The court entered the following findings of fact and conclusions of law:

> **Finding of Fact No. 1:** The fence separating the disputed property from the remaining portions of the NJ Williams Family Partnership, Ltd. property is not a casual fence.
>
> **Finding of Fact No. 2:** The Plaintiff did not prove its case by a preponderance of evidence.
>
> **Finding of Fact No. 3:** Record legal title to the disputed property lies with Defendant James Winn.

5

**Conclusion of Law No. 1:** Award of attorney's fees is not legally permissible under the pleadings and the evidence.

**Conclusion of Law No. 2:** Title to the disputed property is vested in Defendant.

In four issues, the Partnership challenges the legal and factual sufficiency of the evidence supporting the district court's findings. The Partnership contends that it conclusively established that it has record title to the Disputed Property, that Winn failed to prove his claim to have acquired title to the Disputed Property by adverse possession, and that the district court erred in rendering judgment awarding title to, and possession of, the Disputed Property to Winn.

### *Standard of Review*

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 802 (Tex. App.—Austin 2004, pet. denied). A trial court's findings of fact are reviewable for legal and factual sufficiency under the same standards as are applied in reviewing the evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Goldstein v. Mortenson*, 113 S.W.3d 769, 775 (Tex. App.—Austin 2003, no pet.).

For a legal sufficiency challenge, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain the Partnership's legal sufficiency complaint if the record reveals: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a

vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

For a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the finding should be set aside. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing the Partnership's factual sufficiency challenge, we will set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

***Record Title to the Disputed Property***

In its first two issues, the Partnership challenges the legal and factual sufficiency of the evidence supporting the district court's findings that the Partnership "failed to prove its case by a preponderance of the evidence" and that Winn, rather than the Partnership, has record legal title to the Disputed Property. The Partnership contends that (1) there is no evidence that Winn has record title to the Disputed Property, and (2) the evidence conclusively establishes that the record boundary between the Winn ranch and the Partnership ranch does not follow the meandering fence, but continues east/west along the north side of the Disputed Property. According to the

7

Partnership, the cedar tree "monument" marks the northwest corner of the Partnership ranch, and the Partnership has record title to the Disputed Property. We agree with the Partnership.

The only evidence in the record that supports the finding that Winn has record title to the Disputed Property is the Partition Deed with the attached 1987 survey filed in the Hays County deed records. Before trial, the parties stipulated as follows:

> The real property records of Hays County, Texas contain an unbroken chain of title to the real property described in [the 1958 Deed] from the State of Texas as original grantor, through NJ Williams Family Partnership Ltd.
>
> The real property records of Hays County, Texas contain an unbroken chain of title to the real property described in [the 1937 Deed] from the State of Texas as original grantor, through [] James Winn and his sister Kathryn Winn Eoff. The [Partition Deed] was duly recorded in the Hays County Deed Records.

Although the parties stipulated that the Partition Deed was recorded in the Hays County deed records, they did not stipulate that the Partition Deed correctly describes the property to which Winn had an unbroken chain of title. To the extent the Winn/Partnership property line described in the 1937 Deed and the 1958 Deed differs from the description in the Partition Deed, the parties have agreed that the previous instruments control. The parties are bound by the language and effect of their stipulation. *See Rosenboom Machine & Tool, Inc. v. Machala*, 995 S.W.2d 817, 823 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (citing *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 466 (Tex. 1969) (noting vital feature of stipulation is that it is conclusive on party making it)).

8

Both the 1937 Deed and the 1958 Deed describe the property line as proceeding in an east/west line from a large cedar tree along a pasture fence. The 1937 Deed states that from the cedar tree the boundary goes "east along said South line of the said Gibbs Survey with said Gary's pasture fence." The 1958 Deed describes the Partnership/Winn boundary as "following a fence line West 3344 feet to a cedar tree about 10 inches in dia. marked X on North side." The Partnership's surveyor, Claude Hinkle, testified that he examined the 1937 Deed and the 1958 Deed. Hinkle located an undisputed common reference corner and measured to the expected location of the cedar tree "monument" mentioned in both deeds and, within a foot or two of the predicted location, he found a large cedar tree marked with the type of cotton spindle used as a marker pin by surveyors. Hinkle also found flags placed there by other surveyors and found evidence of old cuts in the tree bark. Photographs entered as exhibits at trial show the tree marked with blue flagging and embedded with the remnants of a wire fence. Hinkle testified that, according to the 1958 Deed, the cedar tree marks the northwest corner of the Partnership ranch. Hinkle testified that the Disputed Property is to the south of the cedar tree, on the Partnership side of a boundary line that goes east from this tree. Winn's surveyor, Littlefield, testified that the meandering fence does not follow the boundary line described in the 1937 Deed, and the 1987 surveyors "did not make an effort to show where the deed—the 1937 deed showed [the record boundary]."

There is no evidence that the meandering fence is part of the Winn ranch boundary described in the 1937 Deed. The evidence at trial conclusively established that (1) the Partnership/Winn boundary line begins at the cedar tree and continues east on the north side of the Disputed Property, and (2) the Disputed Property is located within the boundaries of the

9

Partnership ranch as described in the 1958 Deed. The evidence conclusively establishes that the Partnership has record title to the Disputed Property.

### *Title by Adverse Possession*

Winn claimed, in the alternative, that if he did not have record title, he had acquired title to the Disputed Property by adverse possession under the 5-, 10-, and 25-year adverse possession statutes. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025 (5-year), .026 (10-year), .027 (25-year without recorded instrument), .028 (25-year with recorded instrument). These statutes require that Winn prove, at a minimum, that he adversely possessed the Disputed Property for the relevant time period provided for in the statutes. *Id.* Adverse possession is defined in section 16.021 of the civil practice and remedies code as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1); *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). The possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership. *Id.* Exclusive possession of the land is required to support an adverse possession claim, and joint or common possession by the claimant and the property owner defeats the requisite exclusiveness. *West End API Ltd. v. Rothpletz*, 732 S.W.2d 371, 375-76 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (citing *Rick v. Grubbs*, 214 S.W.2d 925, 927 (Tex. 1948)).

To prove adverse possession, Winn offered evidence that he and his predecessors in interest used the Disputed Property for grazing, hunting, fishing, and camping. The record reflects that livestock owned by Winn's father may have grazed on or traveled across the Disputed Property.

Winn leased grazing rights on the ranch to Bill Wyatt, Jr., and Wyatt's cows occasionally grazed near the water gap. There was no evidence that livestock owned by Winn or his lessee continuously grazed on the Disputed Property, and Mike Williams testified that he had never seen cows or other livestock on that part of the ranch. Winn stated that the meandering fence had been there for seventy or more years and that he believed that it marked the boundary of his property. There was no evidence that Winn or his predecessors in interest built the meandering fence. Winn occasionally repaired the fence, but did not significantly alter it or change its character. For the most part, the Partnership maintained the water gap and meandering fence.

None of Winn's activities on the Disputed Property constitute adverse possession under Texas law. The mere grazing of land incidentally enclosed with the claimant's land by a fence created by others does not constitute adverse possession. *McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971); *Orsborn v. Deep Rock Oil Corp.*, 267 S.W.2d 781, 785 (Tex. 1954); *Georgetown Builders, Inc. v. Heirs of Tanksley*, 498 S.W.2d 222, 224 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.). Unless the claimant establishes that he built the fence for the purpose of enclosing the property at issue, the fence is a "casual fence" rather than one that "designedly encloses" the property. *See Rhodes*, 802 S.W.2d at 646. In the present case, Winn did not offer evidence that he or his predecessor in interest built the fence for the purpose of enclosing the property for his own use. The fence is therefore a "casual fence," and Winn's use of the property inside the fence for grazing is not evidence of adverse possession. *See Rhodes*, 902 S.W.2d at 646; *McAllister v. Samuels*, 857 S.W.2d 768, 777 (Tex. App.—Houston [14th Dist.] 1993, no writ); *see also McDonnold*, 465 S.W.2d at 142. In *Georgetown Builders, Inc. v. Tanksley*, this Court held

that when a fence is placed somewhere other than on the true boundary as a matter of convenience, the occasional presence of a claimant's livestock on the property does not constitute adverse possession as a matter of law. 498 S.W.2d at 224; *see also McDonnold*, 465 S.W.2d at 141 ("The grazing of an enclosure thus 'casually' or 'incidentally' created has never been regarded as an actual and visible appropriation of the land within the meaning of [the statute].").

Testimony that Winn maintained the meandering fence does not change it from a "casual fence" to a "designed enclosure." *See Rhodes*, 802 S.W.2d at 646. A casual fence becomes a designed enclosure fence only when the claimant makes such substantial modifications and changes to the character and nature of the fence as to give notice that he is claiming it as his own. *Id.*; *see also Butler v. Hanson*, 455 S.W.2d 942, 945 (Tex. 1970) (claimant essentially created new fence by replacing wire fence with mesh fence and doubling number of fence poles). Here, Winn made use of a fence built by someone else. Winn's use of the Disputed Property for grazing cattle and goats under these circumstances was not an actual and visible appropriation of the Disputed Property. *See McDonnold*, 465 S.W.2d at 141 (explaining that under the "open-range" concept landowners are not obligated to fence their property and observing that "[i]t would be rather strange then to hold that a person might acquire limitation title by simply doing that which he is legally entitled to do, i.e., permit his livestock to wander and graze upon land that he happened to find enclosed with his own").

Winn's other activities on the property included walking on it, hunting on it, cutting cedar posts, and camping there as a boy scout two or three times a year during the years 1954 through 1957. Winn's occasional use of the property for hunting and camping purposes, including

12

the construction of deer blinds and deer feeders, was insufficient to establish adverse possession. *See Bramlett v. Harris & Eliza Kempner Fund*, 462 S.W.2d 104, 105 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.). Sporadic, irregular and occasional use of land, including cutting timber for fences, cannot sustain a claim of title by limitation. *Kirby Lumber Co. v. Lindsey*, 455 S.W.2d 733, 741 (Tex. 1970); *Harlow v. Giles*, 132 S.W.3d 641, 648 (Tex. App.—Eastland 2004, pet. denied). Moreover, Winn testified that he was aware that Williams family members also hunted on the Disputed Property. Consequently, he failed to establish exclusive use of the Disputed Property as required to establish title by adverse possession. *Turner v. Mullins*, 162 S.W.3d 356, 367 (Tex. App.—Fort Worth 2005, no pet.) (exclusive possession of land required to support adverse possession claim).

Winn also claimed that he paid taxes on the Disputed Property. However, the evidence presented at trial was that he paid taxes on "the ranch." Winn did not introduce the tax records themselves, nor did any of the record evidence tend to show that any tax bill Winn paid included an assessment attributable to the Disputed Property. Unless the tax records distinguish the property in controversy from the property to which a taxpayer owns record title, the presumption is that the taxpayer has paid taxes on his own property. *See Welch v. Matthews*, 642 S.W.2d 829, 832 (Tex. App.—Tyler 1982, no writ). There is no evidence that Winn paid property taxes assessed on the Disputed Property.

After reviewing the record, we conclude that Winn presented no evidence supporting his claim of adverse possession of the Disputed Property. None of his activities on the property was visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably

13

to the Partnership that Winn was asserting a claim of exclusive ownership of the Disputed Property. Rather, the evidence conclusively establishes that Winn and the Partnership both used the Disputed Property, and that Winn did not exclude the Partnership as is required for adverse possession. We agree that the evidence was legally and factually insufficient to support the district court's finding that the meandering fence is not a "casual fence" and that Winn did not prove that he acquired title to the Disputed Property by adverse possession.

### *Conclusion*

The Partnership established as a matter of law that the Disputed Property lies within the boundaries of the property conveyed by the 1958 Deed to the Partnership's predecessors in interest, and that the Partnership has record legal title to the Disputed Property. Winn's conduct and activities on the Disputed Property were not legally or factually sufficient to support his claim to have acquired title to the Disputed Property by adverse possession. We reverse the judgment of the district court and render judgment that title to the Disputed Property is in the NJ Williams Family Partnership, Ltd. To the extent the Partition Deed is inconsistent with this Court's opinion and judgment, the Partition Deed is ineffective.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Reversed and Rendered

Filed: January 15, 2010

14