**GEORGETOWN BUILDERS, INC.,**
Appellant,

v.

**The HEIRS of John TANKSLEY and Henry
Tanksley, et al., Appellees.**

No. 12032.

Court of Civil Appeals of Texas,
Austin.

June 13, 1973.

Rehearing Denied Aug. 8, 1973.

James L. Cutcher, Barkley & Cutcher,
Taylor, for appellant.

Danny M. Womack, Eskew, Brady &
Womack, Austin, for appellees.

SHANNON, Justice.

Appellees, the heirs of John Tanksley,
fifty in number, filed a trespass to try title
suit in the district court of Williamson
County against Georgetown Builders, Inc.,
appellant. The land in controversy con-
sists of 10.25 acres situated in and along
the Middle Fork of the San Gabriel River
near Georgetown. Appellant is the record
owner, and appellees claim title under the
ten year statute of limitations. Vernon's
Tex.Rev.Civ.Stat.Ann. art. 5510. The
cause was submitted to a jury, and based
upon the verdict, judgment was entered for
appellees for title to and possession of the
land. In our opinion, as a matter of law,
appellees did not perfect title by limitation.
We will reverse the judgment and here
render judgment that appellees take noth-
ing.

Appellees pleaded, and the jury found,
that appellees had been in peaceable and

adverse possession of the tract, continuously cultivating, using, or enjoying it for ten years prior to May 11, 1972.

In 1968 the widow and children of Paul W. Ischy sold their ranch of 747.43 acres in the J. B. Pulsifer Survey in Williamson County to James A. Rehler and Joe B. McMaster who, in turn, conveyed the land to appellant. In the Southeast corner of that tract the Ischy deed calls for the boundary to be the center of the Middle Fork of the San Gabriel River. Opposite the Ischy tract is the Tanksley tract, 58 acres obtained by John Tanksley by deed in the last century. The Tanksley deed calls for the northerly boundary of that tract to be to the center of the river.

The center of the river forms the common boundary between the two tracts for the entire length of the Tanksley tract. In times of normal rainfall the river is broad, but shallow, being little more than ankle deep except for a deeper portion known as "Tanksley's Hole" up river. The Tanksley land next to the river is low while on the Ischy side the river is bounded in part by almost sheer rock bluffs and in part by stony, cedar covered slopes.

The Middle Fork of the San Gabriel, like most other Texas streams, is subject to flooding washouts. The evidence was that with some difficulty one could have built a fence down the center of the river in the solid rock bottom or along the river's edge, but that either fence, so placed, would have lasted only until the first heavy rain. The only "practical or common sense" location for a fence, according to appellees' surveyor witness, was " . . . to go on up to get above the waters . . ." And this was precisely what was done sixty or seventy years before by Paul Ischy who built his fence not on his property line, but rather about 175 feet up on the high ground away from the waters of the San Gabriel. The strip of land north between the center of the river and the fence up on the bluff comprises the 10.25 acres in dispute.

The disputed tract was described as one of steep bluffs and stony banks covered with cedar brakes and underbrush "without much room for grass." John Ischy, son of Paul, lived on the Ischy place for about fifty-one years. He was familiar with the Ischy fences and property lines, as well as with the Tanksley property lines. He knew that the Ischy land extended to the center of the river and the Ischys paid taxes on the whole ranch, including the tract in question. For thirty-one years he had kept the fence on the bluff repaired and was not aware that anyone else had done any repairs. There were no gates in the fence because the Ischy ranch had plenty of water, and had no need of water from the Middle Fork of the San Gabriel.

No Tanksley ever told John Ischy, or any other Ischy, as far as John Ischy knew, that they were claiming the land in dispute. Once in awhile Ischy would see a Tanksley sheep on the land in dispute, but he had no objection to the livestock straying over. In response to the question, "You never saw enough animals up there to put you on notice that they were taking over?" Ischy answered, "No, sir. Just, I didn't see even sheep up there but maybe twice, three times a year. Something unusual to see a sheep up there."

When the Ischys sold the land in 1968 the tract in dispute was excepted from the general warranty in the deed. Ischy, though the testimony is somewhat vague, testified that their lawyer had advised that the 10 acre tract be excepted from the warranty so that the Ischys would not " . . . get into any lawsuit."

Several Tanksley heirs testified. None of them knew the origin of the fence on the bluff. The other three sides of the Tanksley land were fenced by the neighboring landowners. Some of the Tanksley heirs testified that they had repaired the fence upon the bluff as needful. They had run considerable livestock. All of the livestock were free to roam across the river

**224**

where it was shallow enough and onto the 10 acre strip of land on the Ischy side of the river. They testified that they had seen their livestock on the ten acres and that there were bones there from cattle which had died on the bluff. The Tanksleys never lived on the 10 acres, nor did they place any improvements there. None of the Tanksleys had ever told an Ischy, or anyone else outside the family, that they claimed the strip of land. As one heir said, he knew that the strip of land was Tanksley land because "that was my teaching." Their claim was also kept secret from the taxing authorities since there is no evidence that they ever paid any taxes on any other land other than described in their deed.

By a number of points of error appellants argue that appellees failed to show that they had given notice of their hostile claim or that they had made an actual and visible appropriation of the land which would constitute adverse possession.

Mere grazing of land incidentally enclosed as a result of the construction of fences built for another purpose does not constitute possession that will ripen into title by limitation. The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must show as a part of his case that the land in dispute was designedly enclosed. McDonnold v. Weinacht, 465 S.W.2d 136 (Tex.1971); Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781 (1954); Cox v. Olivard, 482 S.W.2d 682 (Tex.Civ.App.1972, writ ref'd n.r.e.).

The 10 acre tract was incidentally enclosed with appellees' deeded land by a fence on the bluff built, not by appellees but by Paul Ischy. The fence was located on the bluff as a convenience to save its being rebuilt after every hard rain. Though appellees' livestock did stray across the river and graze on the 10 acre tract such use of that land, under the circumstances did not amount to such adverse and hostile possession as to perfect title by limitation. Orsborn, *supra,* and McDonnold, *supra.*

The judgment is reversed and judgment is here rendered that appellees take nothing.

Reversed and rendered.