TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00724-CV






NJ Williams Family Partnership, Ltd., Appellant


v.


James Buchanan Winn, III, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT

NO. 2001-0116, HONORABLE WILLIAM HENRY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 NJ Williams Family Partnership, Ltd. (the "Partnership") appeals a judgment rendered
against it in favor of James Buchanan Winn, III ("Winn") in its suit to quiet title to 1.8 acres of
land in Hays County, Texas. The Partnership contended that it had record title to the property
and sought to remove a cloud on its title created by Winn's filing a deed that purported to convey
the 1.8-acre tract to Winn. Winn filed an answer denying that the Partnership had record title to the
property and, in the alternative, filed a counterclaim asserting title to the property by adverse
possession. After a bench trial, the district court rendered judgment in favor of Winn. The
Partnership appeals, contending that it conclusively established that the Partnership has record title
to the property and that Winn failed to prove he acquired title to the property by adverse possession. 
We reverse the judgment of the district court and render judgment in favor of the Partnership.


Factual and Procedural Background

 This dispute involves ownership of 1.8 acres of land (the "Disputed Property")
located on the boundary between ranches owned by the Partnership and Winn in Hays County,
Texas. The Winn ranch lies directly north of the Disputed Property, and the Partnership ranch lies
to the southeast.

 


 

 

 

 

 

The Disputed Property is roughly triangular in shape and is bounded on the north and west sides by
what the Partnership claims to be the record boundary lines of the Partnership ranch. The third side
of the triangle is a fence that begins at a point along the north boundary of the Partnership ranch
and meanders southwest until it reaches the west boundary of the Partnership ranch. Winn claims
that the meandering fence is part of the southern boundary of the Winn ranch.

 The Partnership's predecessors in interest, Lee and Nelda Williams, acquired
their property in 1958. The conveyance to Lee and Nelda Williams (the "1958 Deed") describes
the northern boundary of the Partnership ranch as a line traveling east/west "following approximate
a fence line West 3344 feet to a cedar tree about 10 inches in dia. Marked x on the North side." 
In 1996, Nelda Williams conveyed the entire ranch, with the exception of an acre she retained as
her residence, to the NJ Williams Family Partnership.

 Winn's predecessor in interest, his father James B. Winn, Jr., acquired the Winn ranch
in 1937. His conveyance (the "1937 Deed") describes the southern boundary of the Winn ranch as
beginning at a cedar tree 12 inches in diameter, marked with an "X" on its northwest side, located
in the northwest corner of "Gary's pasture fence." From that point, the boundary goes east along
"Gary's pasture fence" 2,508 feet. Neither the 1958 Deed nor the 1937 Deed mentions the
meandering fence.

 The Disputed Property is essentially a hill country bluff. The terrain is rocky and
hilly with dense cedar trees and brush. The meandering fence leaves the north boundary of the
Partnership ranch at a "water gap"--a portion of the fence that crosses a creek and hangs from a
cable secured to trees on either side of the creek. After crossing the creek, the fence skirts the
south side of the bluff until it rejoins the west boundary of the Partnership ranch. Mike Williams,
a member of the NJ Williams Family Partnership, testified that the meandering fence does not follow
the true boundary line between the Partnership ranch and the Winn ranch. Although neither Winn
nor Williams knew who built the meandering fence, Williams opined that the fence was placed in
a location where it could be easily maintained as opposed to continuing along the true property line
up the rocky bluff through a ravine and dense brush. Williams also stated that the placement of the
water gap was determined by the presence of trees large enough to support the hanging fence, and
that in 1998 he had to move the water gap portion of the fence even further into the Partnership ranch
property in order to find a suitable anchoring tree.

 Winn had his ranch surveyed in 1984. The 1984 survey's description of the
southern boundary of the ranch differs from the description in the 1937 Deed. According to the
1984 survey, the boundary does not continue west to the cedar tree referred to in the 1937 Deed. 
Rather, the 1984 survey field notes indicate that the surveyors set an iron pin at the point where the
meandering fence leaves the property line, and they set additional iron pins at various points along
the meandering fence to the point where it rejoined the west boundary of the Partnership ranch. (1) The
1984 survey identified the meandering fence as part of the southern boundary of the Winn ranch and,
thus, included the Disputed Property as part of the Winn ranch.

 In 1987, Winn and his sister decided to partition the Winn ranch between them,
and Winn had another survey done. The description of the southern boundary in the 1987 survey
follows the iron pins set along the meandering fence by the 1984 survey crew. Consequently,
the 1987 survey also includes the Disputed Property as part of the Winn ranch. Winn filed a
Partition Deed in the Hays County deed records. The Partition Deed conveys the west part of the
Winn ranch to Winn and the east part of the Winn ranch to Winn's sister. Attached to the
Partition Deed is the 1987 survey describing the southern boundary of the Winn ranch as following
the meandering fence. As a consequence, the Partition Deed includes the Disputed Property in the
description of property conveyed to Winn.

 The Partnership became aware of the Partition Deed and the 1987 survey in
September 2000 when Mike Williams saw a sales brochure for a portion of the ranch owned by
Winn's sister. The brochure included a survey plat that noted "1.8 acres in conflict." Mike Williams
then investigated the deed records and discovered the discrepancy between the boundary descriptions
in the 1958 Deed and the Partition Deed.

 In October 2000, the Partnership's attorney sent Winn a letter asking Winn to explain
the basis for his claim to the Disputed Property. Winn responded that he did not "have a clue as
to what you are talking about--the fence hasn't changed in 63 years or longer" and indicated that
he would not retreat from his claim of ownership of the Disputed Property. In January 2001, the
Partnership filed a suit to quiet title to the Disputed Property. Winn denied that the Partnership had
record title to the Disputed Property and, in the alternative, filed a counterclaim asserting title to the
Disputed Property by adverse possession under the 5-, 10-, and 25-year adverse possession statutes. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025-.028 (West 2002).

 After a bench trial, the district court rendered judgment that Winn had title to
and possession of the Disputed Property. The court entered the following findings of fact and
conclusions of law:

 Finding of Fact No. 1: The fence separating the disputed property from the
remaining portions of the NJ Williams Family Partnership, Ltd. property is not a
casual fence.


 Finding of Fact No. 2: The Plaintiff did not prove its case by a preponderance of
evidence.


 Finding of Fact No. 3: Record legal title to the disputed property lies with
Defendant James Winn.


 Conclusion of Law No. 1: Award of attorney's fees is not legally permissible under
the pleadings and the evidence.


 Conclusion of Law No. 2: Title to the disputed property is vested in Defendant.

In four issues, the Partnership challenges the legal and factual sufficiency of the evidence supporting
the district court's findings. The Partnership contends that it conclusively established that it has
record title to the Disputed Property, that Winn failed to prove his claim to have acquired title to the
Disputed Property by adverse possession, and that the district court erred in rendering judgment
awarding title to, and possession of, the Disputed Property to Winn.

Standard of Review

 Findings of fact in a case tried to the court have the same force and dignity as a
jury's verdict. Kendall Builders, Inc. v. Chesson, 149 S.W.3d 796, 802 (Tex. App.--Austin 2004,
pet. denied). A trial court's findings of fact are reviewable for legal and factual sufficiency under
the same standards as are applied in reviewing the evidence supporting a jury's verdict. Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Goldstein v. Mortenson, 113 S.W.3d 769, 775
(Tex. App.--Austin 2003, no pet.).

 For a legal sufficiency challenge, we review the evidence in the light most favorable
to the judgment, crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802,
807 (Tex. 2005). We will sustain the Partnership's legal sufficiency complaint if the record reveals: 
(1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite
of the vital fact. See id. at 810. More than a scintilla of evidence exists if the evidence rises to a
level that would enable reasonable and fair-minded people to differ in their conclusions. Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).

 For a factual sufficiency challenge, we must consider and weigh all the evidence in
the record, both supporting and against the finding, to decide whether the finding should be set aside. 
See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing the Partnership's
factual sufficiency challenge, we will set aside the judgment only if the finding is so against the
great weight and preponderance of the evidence as to be clearly wrong and unjust. Id.; Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

 We review the trial court's conclusions of law de novo. BMC Software Belgium, N.V.
v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's legal conclusions drawn
from the facts to determine whether the conclusions are correct. Id.

Record Title to the Disputed Property

 In its first two issues, the Partnership challenges the legal and factual sufficiency
of the evidence supporting the district court's findings that the Partnership "failed to prove its
case by a preponderance of the evidence" and that Winn, rather than the Partnership, has record
legal title to the Disputed Property. The Partnership contends that (1) there is no evidence that Winn
has record title to the Disputed Property, and (2) the evidence conclusively establishes that the
record boundary between the Winn ranch and the Partnership ranch does not follow the meandering
fence, but continues east/west along the north side of the Disputed Property. According to the
Partnership, the cedar tree "monument" marks the northwest corner of the Partnership ranch, and
the Partnership has record title to the Disputed Property. We agree with the Partnership.

 The only evidence in the record that supports the finding that Winn has record title
to the Disputed Property is the Partition Deed with the attached 1987 survey filed in the Hays County
deed records. Before trial, the parties stipulated as follows:

 The real property records of Hays County, Texas contain an unbroken
chain of title to the real property described in [the 1958 Deed] from
the State of Texas as original grantor, through NJ Williams Family
Partnership Ltd.


 The real property records of Hays County, Texas contain an unbroken
chain of title to the real property described in [the 1937 Deed] from
the State of Texas as original grantor, through [] James Winn and his
sister Kathryn Winn Eoff. The [Partition Deed] was duly recorded in
the Hays County Deed Records.

Although the parties stipulated that the Partition Deed was recorded in the Hays County
deed records, they did not stipulate that the Partition Deed correctly describes the property to which
Winn had an unbroken chain of title. To the extent the Winn/Partnership property line described in
the 1937 Deed and the 1958 Deed differs from the description in the Partition Deed, the parties have
agreed that the previous instruments control. The parties are bound by the language and effect
of their stipulation. See Rosenboom Machine & Tool, Inc. v. Machala, 995 S.W.2d 817, 823
(Tex. App.--Houston [1st Dist.] 1999, pet. denied) (citing Gevinson v. Manhattan Constr. Co.,
449 S.W.2d 458, 466 (Tex. 1969) (noting vital feature of stipulation is that it is conclusive on
party making it)).

 Both the 1937 Deed and the 1958 Deed describe the property line as proceeding in
an east/west line from a large cedar tree along a pasture fence. The 1937 Deed states that from the
cedar tree the boundary goes "east along said South line of the said Gibbs Survey with said Gary's
pasture fence." The 1958 Deed describes the Partnership/Winn boundary as "following a fence line
West 3344 feet to a cedar tree about 10 inches in dia. marked X on North side." The Partnership's
surveyor, Claude Hinkle, testified that he examined the 1937 Deed and the 1958 Deed. Hinkle
located an undisputed common reference corner and measured to the expected location of the cedar
tree "monument" mentioned in both deeds and, within a foot or two of the predicted location, he
found a large cedar tree marked with the type of cotton spindle used as a marker pin by surveyors. 
Hinkle also found flags placed there by other surveyors and found evidence of old cuts in the tree
bark. Photographs entered as exhibits at trial show the tree marked with blue flagging and embedded
with the remnants of a wire fence. Hinkle testified that, according to the 1958 Deed, the cedar tree
marks the northwest corner of the Partnership ranch. Hinkle testified that the Disputed Property is
to the south of the cedar tree, on the Partnership side of a boundary line that goes east from this tree. 
Winn's surveyor, Littlefield, testified that the meandering fence does not follow the boundary line
described in the 1937 Deed, and the 1987 surveyors "did not make an effort to show where the
deed--the 1937 deed showed [the record boundary]."

 There is no evidence that the meandering fence is part of the Winn ranch boundary
described in the 1937 Deed. The evidence at trial conclusively established that (1) the
Partnership/Winn boundary line begins at the cedar tree and continues east on the north side of
the Disputed Property, and (2) the Disputed Property is located within the boundaries of the
Partnership ranch as described in the 1958 Deed. The evidence conclusively establishes that the
Partnership has record title to the Disputed Property.

Title by Adverse Possession

 Winn claimed, in the alternative, that if he did not have record title, he had acquired
title to the Disputed Property by adverse possession under the 5-, 10-, and 25-year adverse
possession statutes. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025 (5-year), .026 (10-year), .027
(25-year without recorded instrument), .028 (25-year with recorded instrument). These statutes
require that Winn prove, at a minimum, that he adversely possessed the Disputed Property for the
relevant time period provided for in the statutes. Id. Adverse possession is defined in section 16.021
of the civil practice and remedies code as "an actual and visible appropriation of real property,
commenced and continued under a claim of right that is inconsistent with and is hostile to the
claim of another person." Id. § 16.021(1); Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990). The
possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as
to indicate unmistakably an assertion of a claim of exclusive ownership. Id. Exclusive possession
of the land is required to support an adverse possession claim, and joint or common possession
by the claimant and the property owner defeats the requisite exclusiveness. West End API Ltd.
v. Rothpletz, 732 S.W.2d 371, 375-76 (Tex. App.--Dallas 1987, writ ref'd n.r.e.) (citing Rick
v. Grubbs, 214 S.W.2d 925, 927 (Tex. 1948)).

 To prove adverse possession, Winn offered evidence that he and his predecessors in
interest used the Disputed Property for grazing, hunting, fishing, and camping. The record reflects
that livestock owned by Winn's father may have grazed on or traveled across the Disputed Property. 
Winn leased grazing rights on the ranch to Bill Wyatt, Jr., and Wyatt's cows occasionally grazed
near the water gap. There was no evidence that livestock owned by Winn or his lessee continuously
grazed on the Disputed Property, and Mike Williams testified that he had never seen cows or
other livestock on that part of the ranch. Winn stated that the meandering fence had been there for
seventy or more years and that he believed that it marked the boundary of his property. There was
no evidence that Winn or his predecessors in interest built the meandering fence. Winn occasionally
repaired the fence, but did not significantly alter it or change its character. For the most part, the
Partnership maintained the water gap and meandering fence.

 None of Winn's activities on the Disputed Property constitute adverse possession
under Texas law. The mere grazing of land incidentally enclosed with the claimant's land by a fence
created by others does not constitute adverse possession. McDonnold v. Weinacht, 465 S.W.2d
136, 142 (Tex. 1971); Orsborn v. Deep Rock Oil Corp., 267 S.W.2d 781, 785 (Tex. 1954);
Georgetown Builders, Inc. v. Heirs of Tanksley, 498 S.W.2d 222, 224 (Tex. Civ. App.--Austin
1973, writ ref'd n.r.e.). Unless the claimant establishes that he built the fence for the purpose of
enclosing the property at issue, the fence is a "casual fence" rather than one that "designedly
encloses" the property. See Rhodes, 802 S.W.2d at 646. In the present case, Winn did not offer
evidence that he or his predecessor in interest built the fence for the purpose of enclosing the
property for his own use. The fence is therefore a "casual fence," and Winn's use of the property
inside the fence for grazing is not evidence of adverse possession. See Rhodes, 902 S.W.2d at 646;
McAllister v. Samuels, 857 S.W.2d 768, 777 (Tex. App.--Houston [14th Dist.] 1993, no writ);
see also McDonnold, 465 S.W.2d at 142. In Georgetown Builders, Inc. v. Tanksley, this Court held
that when a fence is placed somewhere other than on the true boundary as a matter of convenience,
the occasional presence of a claimant's livestock on the property does not constitute adverse
possession as a matter of law. 498 S.W.2d at 224; see also McDonnold, 465 S.W.2d at 141 ("The
grazing of an enclosure thus 'casually' or 'incidentally' created has never been regarded as an actual
and visible appropriation of the land within the meaning of [the statute].").

 Testimony that Winn maintained the meandering fence does not change it from
a "casual fence" to a "designed enclosure." See Rhodes, 802 S.W.2d at 646. A casual fence
becomes a designed enclosure fence only when the claimant makes such substantial modifications
and changes to the character and nature of the fence as to give notice that he is claiming it as his
own. Id.; see also Butler v. Hanson, 455 S.W.2d 942, 945 (Tex. 1970) (claimant essentially created
new fence by replacing wire fence with mesh fence and doubling number of fence poles). Here,
Winn made use of a fence built by someone else. Winn's use of the Disputed Property for grazing
cattle and goats under these circumstances was not an actual and visible appropriation of the
Disputed Property. See McDonnold, 465 S.W.2d at 141 (explaining that under the "open-range"
concept landowners are not obligated to fence their property and observing that "[i]t would be rather
strange then to hold that a person might acquire limitation title by simply doing that which he is
legally entitled to do, i.e., permit his livestock to wander and graze upon land that he happened to
find enclosed with his own").

 Winn's other activities on the property included walking on it, hunting on it,
cutting cedar posts, and camping there as a boy scout two or three times a year during the years 1954
through 1957. Winn's occasional use of the property for hunting and camping purposes, including
the construction of deer blinds and deer feeders, was insufficient to establish adverse possession. 
See Bramlett v. Harris & Eliza Kempner Fund, 462 S.W.2d 104, 105 (Tex. Civ. App.--Houston
[1st Dist.] 1970, writ ref'd n.r.e.). Sporadic, irregular and occasional use of land, including cutting
timber for fences, cannot sustain a claim of title by limitation. Kirby Lumber Co. v. Lindsey,
455 S.W.2d 733, 741 (Tex. 1970); Harlow v. Giles, 132 S.W.3d 641, 648 (Tex. App.--Eastland
2004, pet. denied). Moreover, Winn testified that he was aware that Williams family members
also hunted on the Disputed Property. Consequently, he failed to establish exclusive use of
the Disputed Property as required to establish title by adverse possession. Turner v. Mullins,
162 S.W.3d 356, 367 (Tex. App.--Fort Worth 2005, no pet.) (exclusive possession of land required
to support adverse possession claim).

 Winn also claimed that he paid taxes on the Disputed Property. However, the
evidence presented at trial was that he paid taxes on "the ranch." Winn did not introduce the
tax records themselves, nor did any of the record evidence tend to show that any tax bill Winn paid
included an assessment attributable to the Disputed Property. Unless the tax records distinguish the
property in controversy from the property to which a taxpayer owns record title, the presumption is
that the taxpayer has paid taxes on his own property. See Welch v. Matthews, 642 S.W.2d 829, 832
(Tex. App.--Tyler 1982, no writ). There is no evidence that Winn paid property taxes assessed on
the Disputed Property.

 After reviewing the record, we conclude that Winn presented no evidence supporting
his claim of adverse possession of the Disputed Property. None of his activities on the property
was visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably
to the Partnership that Winn was asserting a claim of exclusive ownership of the Disputed Property. 
Rather, the evidence conclusively establishes that Winn and the Partnership both used the
Disputed Property, and that Winn did not exclude the Partnership as is required for
adverse possession. We agree that the evidence was legally and factually insufficient to support the
district court's finding that the meandering fence is not a "casual fence" and that Winn did not prove
that he acquired title to the Disputed Property by adverse possession.

Conclusion

 The Partnership established as a matter of law that the Disputed Property lies within
the boundaries of the property conveyed by the 1958 Deed to the Partnership's predecessors in
interest, and that the Partnership has record legal title to the Disputed Property. Winn's conduct and
activities on the Disputed Property were not legally or factually sufficient to support his claim to
have acquired title to the Disputed Property by adverse possession. We reverse the judgment of the
district court and render judgment that title to the Disputed Property is in the NJ Williams Family
Partnership, Ltd. To the extent the Partition Deed is inconsistent with this Court's opinion and
judgment, the Partition Deed is ineffective.


 _____________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Reversed and Rendered

Filed: January 15, 2010
1. Clarence Littlefield, the owner of the company that performed the 1984 survey, testified
that when locating property lines, a surveyor should first attempt to find any "monuments" identified
in the deed instrument. In most cases, the "monument" is a large tree with a mark on it such as the
cedar tree referred to in the 1958 Deed and the 1937 Deed. The field notes indicated that, in 1984,
no fence line continued up the bluff to the cedar tree. Littlefield testified that the 1984 surveyors
apparently did not attempt to locate the cedar tree "monument," and instead set new survey pins
along the meandering fence.